UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| IN RE: ENGLE CASES | ) ) ) | CIVIL ACTION NO. 09-10000-WGY |

MEMORANDUM AND ORDER

YOUNG, D.J.                                September 12, 2014

## I.    INTRODUCTION

These two consolidated motions address the same factual
situation: cases where a living plaintiff had timely filed an
Engle action before subsequently passing away, and where the
decedent's personal representative had not amended the complaint
to reflect the changed status or cause of action before
Florida's two-year statute of limitations for wrongful death
actions had expired.  They then pose the same legal question:
does a wrongful death claim relate back to the original
complaint, such that it is not barred by the statute of
limitations, or is it independent, such that the wrongful death
claim is time barred?  While this question appears to be
unanswered, at least by controlling authorities, there is
helpful guidance from the Florida Supreme Court and district
courts of appeal.  After careful consideration, this Court holds

1

that the wrongful death claims in question relate back to the filing of the original complaint, and are not time barred.

This opinion also addresses a secondary question concerning survival actions, and then makes several case management determinations as to how complaints ought be handled where the plaintiff dies between the case's original filing and its eventual activation.

A.   **Procedural History**

This opinion addresses ninety-one of the thousands of so-called Engle-progeny cases created when the Florida Supreme Court, in Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006), decertified for future purposes a class action brought by a group of smokers against several tobacco companies, but held that certain jury findings in earlier stages of class litigation had preclusive "effect for common issues decided against the tobacco companies and in favor of the smokers." Walker v. R.J. Reynolds Tobacco Co., 734 F.3d 1278, 1280 (11th Cir. 2013), cert. denied, 134 S. Ct. 2727 (2014). This Court is managing the Engle cases filed in the Middle District of Florida toward trial. See Mem. & Order, Aug. 1, 2013, ECF No. 1120; see also Walker, 734 F.3d at 1281-84 (reviewing history of Engle litigation).

Turning to the issue in the cases at bar, on January 31, 2014, R.J. Reynolds Tobacco Company, Philip Morris USA Inc., and

Lorillard Tobacco Company (collectively, the "Defendants") moved
to dismiss, or in the alternative, for summary judgment on,
ninety-one allegedly time-barred cases pending before this
Court.  Defs.' Mot. Dismiss, Or Summ. J. On, 91 Time-Barred
Claims ("Defs.' Mot."), ECF No. 1386; see also id., App. A
("Death App."), ECF No. 1386-1 (identifying cases) (reproduced
below as Appendix A).  The cases in question are spread across
multiple waves and are currently categorized as personal injury
cases.  Defs.' Mot. 4 n.2.  On January 17, 2014, forty-three of
these cases were activated pursuant to this Court's case
activation order.  Case Activation Order, Jan. 17, 2014, ECF No.
1371; Mot. Amend Compls. ("Mot. Amend") 2 n.1, ECF No. 1412.

     The plaintiffs in these cases (collectively, the
"Plaintiffs") filed an opposition on February 18, 2014.  Pls.'
Resp. Opp'n Defs.' Mot. Dismiss, Or Summ. J. On, 91 Time-Barred
Claims ("Pls.' Opp'n"), ECF No. 1400.  On February 27, 2014,
this Court announced that, pursuant to Federal Rule of Civil
Procedure 12(d), it would treat this motion as a motion for
summary judgment, and it granted the Plaintiffs fourteen days to
file any additional materials.  Elec. Notice, Feb. 27, 2014, ECF
No. 1411.

     On that same day, the Plaintiffs moved to amend the ninety-
one listed complaints in an effort to cure the statute of
limitations problem identified in the Defendants' original

motion.  Mot. Amend.  Defendants opposed on March 17, 2014.
Defs.' Resp. Pls.' Mot. Amend 91 Compls. ("Opp'n Amend"), ECF
No. 1453.  No further materials were filed.

This Court heard these motions on April 3, 2014, at which
time it took the matter under advisement.  See Minute Entry,
Apr. 3, 2014, ECF No. 1485.

### B.   Facts

All of these cases were timely filed as personal injury
suits by living plaintiffs.  See Defs.' Mot. 4 n.2.  The only
relevant facts at issue in this motion are the dates on which
each plaintiff allegedly died, and whether that date is more
than two years ago.  See id. at 1 n.1.  The Defendants have used
the Court's Case Management Questionnaire to determine the date
of death for each of the ninety-one plaintiffs at issue here,
and have concluded that all of those events occurred more than
two years ago.[1]  See id.; Death App.  The Plaintiffs do not
dispute this conclusion.  See Defs.' Mot. 1 n.1; Pls.' Opp'n 12.

## II.  ANALYSIS

### A.   Standards of Review

There are two separate standards of review at issue here:
one governing the Defendants' summary judgment motion, and one

---

[1] Federal Engle courts have previously granted motions based
on dates of death provided in case management questionnaires.
See, e.g., Order (Corrigan, Howard, and Dalton, JJ.), Nov. 26,
2012, ECF No. 835.

for the Plaintiffs' motion to amend the complaints at issue.
Under both standards, however, the motions rise or fall based on
whether the complaints comply with the statute of limitations.

Turning first to the Defendants' motion: summary judgment
is appropriate "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a); see also
Galvez v. Bruce, 552 F.3d 1238, 1241 (11th Cir. 2008).  If a
claim is barred by the applicable statute of limitations,
summary judgment is proper.  See, e.g., Merle Wood & Assoc. v.
Trinity Yachts, LLC, 714 F.3d 1234, 1237-38 (11th Cir. 2013);
Bell v. Metro. Atlanta Rapid Transit Auth., 521 F. App'x 862,
864-65 (11th Cir. 2013).

Turning next to the Plaintiffs' motion, under Federal Rule
of Civil Procedure 15, a party "may amend its pleading once as a
matter of course" within twenty-one days of service, Fed. R.
Civ. P. 15(a)(1)(A), or after receiving the court's permission,
Fed. R. Civ. P. 15(a)(2).[2]  The court must "freely give leave
when justice so requires," id., and the amendment ought be

---

[2] Plaintiffs move that amendment be granted as a matter of
course under Federal Rule of Civil Procedure ("Rule")
15(a)(1)(A) "because these complaints have not previously been
amended . . . ." Mot. Amend 2.  As the Defendants correctly
point out, however, leave to amend is only automatic if
requested within twenty-one days of the filing of the initial
complaint, and here the complaints were first served years
before this motion was ever filed.  Opp'n Amend 1-2.  This Court
thus proceeds only under Rule 15(a)(2).

allowed unless there is a "substantial reason to deny leave."
Thomas v. Town of Davie, 847 F.2d 771, 773 (11th Cir. 1988)
(quoting Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598
(Former 5th Cir. 1981)).  These reasons are narrowly prescribed,
and the Supreme Court has stated that they include "undue delay,
bad faith or dilatory motive on the part of the movant, repeated
failure to cure deficiencies by amendments previously allowed,
undue prejudice to the opposing party by virtue of allowance of
the amendment, [and] futility of amendment, etc."  Foman v.
Davis, 371 U.S. 178, 182 (1962).

If a claim is barred by the applicable statute of
limitations, however, amendment is "futile," and leave to amend
ought be denied.  See, e.g., Cowell v. Palmer Twp., 263 F.3d
286, 296 (3d Cir. 2001); United States v. Pittman, 209 F.3d 314,
318-19 (4th Cir. 2000).  Under those circumstances, an amendment
may be allowed only if it "relates back to the date of the
original pleading," either because "the law that provides the
applicable statute of limitations allows relation back," or "the
amendment asserts a claim . . . that arose out of the conduct,
transaction, or occurrence set out – or attempted to be set out
– in the original pleading."  Fed. R. Civ. P. 15(c)(1); see also
Tie Qian v. Sec'y, Dep't. of Veterans Affairs, 432 F. App'x 808,
810-11 (11th Cir. 2011).

   B.   Statute of Limitations and Relation Back

## 1.    Wrongful Death Act

The wrongful death statute at issue in this case was originally written to close a loophole where:

> [a]t common law a person's right to sue for personal injuries terminated with his death.  This created the anomaly that a tortfeasor who would normally be liable for damages caused by his tortious conduct would not be liable in situations where the damages were so severe as to result in death.

Variety Children's Hosp. v. Perkins, 445 So. 2d 1010, 1012 (Fla. 1983).  To correct this "paradox," id., the legislature passed the Florida Wrongful Death Act (the "Wrongful Death Act"), which provides that when the "death of a person is caused by the wrongful act, [or] negligence . . . of any person," that person remains liable notwithstanding the death of the harmed individual.  Fla. Stat. § 768.19.  The legislature, however, is specific about how this suit may proceed:

> The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death.  When a personal injury to the decedent results in death, no action for personal injury shall survive, and any action pending at the time of death shall abate.

Fla. Stat. § 768.20.  If the case was originally filed as a personal injury action and the plaintiff dies, the suit is not dismissed, but rather is "suspended until the personal representative of the decedent's estate is added as a party to the pending action and receives a reasonable opportunity to

7

amend the complaint to state the damages sought under a wrongful
death claim . . . ." Capone v. Philip Morris USA, Inc., 116 So.
3d 363, 377 (Fla. 2013).

Wrongful death actions, including those in Engle cases, are
subject to a two-year statute of limitations.  Fla. Stat. §
95.11(4)(d); Taylor v. R.J. Reynolds Tobacco Co., 441 F. App'x
664, 665 (11th Cir. 2011).  The limitations period begins to run
at the date of death.  Walker v. Beech Aircraft Corp., 320 So.
2d 418, 420 (Fla. 3d DCA 1975); see also Raie v. Cheminova,
Inc., 221 F. Supp. 2d 1297, 1298-99 (M.D. Fla. 2002) (Lazzara,
J.), aff'd, 336 F.3d 1278 (11th Cir. 2003).

### 2.  Relation Back Determination

In the cases at issue in these motions, it is undisputed
that the original complaints (filed by the then-alive
plaintiffs) were timely filed, but that more than two years have
elapsed since the plaintiffs passed away.  These wrongful death
claims would thus be time barred unless they relate back to the
original, timely filed complaints.  See, e.g., Fed. R. Civ. P.
15(c).  See generally Rebecca S. Engrav, Comment, Relation Back
of Amendments Naming Previously Unnamed Defendants Under Federal
Rule of Civil Procedure 15(c), 89 Calif. L. Rev. 1549, 1550-52
(2001) (discussing the relation back concept).

To answer this relation back question, this Court must
first resolve a prerequisite one: which law governs relation

back under these circumstances, Florida law or federal law?
Here, the Eleventh Circuit has held that "federal courts sitting
in diversity [may] apply [the] relation-back rules of state law
where, as here, state law provides the statute of limitations
for the action." Saxton v. ACF Indus., Inc., 254 F.3d 959, 963
(11th Cir. 2001) (en banc). Since these Engle-progeny cases are
diversity actions, and since Florida law provides the two-year
statute of limitation period, state law controls.

In this case, the relevant state rule is Florida Rule of
Civil Procedure 1.190(c), which provides that:

> When the claim or defense asserted in the amended
> pleading arose out of the conduct, transaction, or
> occurrence set forth or attempted to be set forth in
> the original pleading, the amendment shall relate back
> to the date of the original pleading.

Fla. R. Civ. P. 1.190(c). The issue of whether a wrongful death
action relates back to the original tort action appears to be an
open question.[3]

### a.   Florida District Courts of Appeal

---

[3] Defendants cite to a November 8, 2013, Florida Circuit
Court decision which denied a motion to amend an Engle complaint
to add a wrongful death claim after the two-year statute of
limitations had elapsed. See Defs.' Mot., Ex. 2, Estate of Mina
Pappas, Case No. 07-022785 CACE (19) (Cir. Ct. For The 17th
Judicial Cir. In & For Broward Cnty., Fla. Nov. 8, 2013), ECF
No. 1386-2. This decision, however, is relatively conclusory,
and in any event, does not engage with Florida Supreme Court
decisions that, as discussed infra, appear to be on point. This
Court thus pays it due consideration, but does not deem it to be
dispositive.

There are, however, several lines of intermediate appellate court cases that provide a useful gloss on this question, even if they do not provide a precise answer.  One line, relying on the Florida Supreme Court's decision in Livingston v. Malever, 137 So. 113 (Fla. 1931), holds that "[w]hen a cause of action set forth in an amended pleading in a pending litigation is new, different, and distinct from that originally set up, there is no relation back."  Trumbull Ins. Co. v. Wolentarski, 2 So. 3d 1050, 1055 (Fla. 3d DCA 2009) (quoting Livingston, 137 So. at 118); see also Kopel v. Kopel, 117 So. 3d 1147, 1152 (Fla. 3d DCA 2013) ("To relate back, the pleading must not state a new cause of action."), review granted, No. SC13-992, 2014 WL 2730553 (Fla. June 11, 2014); Page v. McMullan, 849 So. 2d 15, 16 (Fla. 1st DCA 2003) ("It is well-settled, however, that [an] amendment may not be used to avoid the statute of limitations if the amendment sets forth a new and distinct cause of action."); West Volusia Hosp. Auth. v. Jones, 668 So. 2d 635, 636 (Fla. 5th DCA 1996) (holding that an amended complaint does not relate back "where it states a new and distinct cause of action from that set forth in the original pleading"); School Bd. of Broward Cnty. v. Surette, 394 So. 2d 147, 154 (Fla. 4th DCA 1981) ("The rule of liberality [in allowing amendments under the relation back doctrine] does not authorize a new cause of action.").

The Defendants rely heavily on this line of cases.   See
Defs.' Mot. 7-12.   The Defendants argue that because the Florida
Supreme Court has clearly held that Wrongful Death Act
"creat[es] a new and distinct right of action from the right of
action the decedent had prior to death," Toombs v. Alamo Rent-A-
Car, Inc., 833 So. 2d 109, 111 (Fla. 2002), and because one
cause of action cannot, by definition under these cases, relate
back to a separate cause of action, any attempt to amend the
complaints must fail.   See Defs.' Mot. 9-10.

While that argument makes logical sense, there is another
line of cases that calls this conclusion into question.   In
Fabbiano v. Demings, 91 So. 3d 893 (Fla. 5th DCA 2012), the
district court of appeal rejected any contemporary reliance on
Livingston and its progeny, noting that the case "was decided
before the modern rule [Florida Rule of Civil Procedure 1.190]
was adopted," and that "the rule's intent was to alter the
'cause of action' test, embodied in the prior law, in favor of a
more liberal rule based upon 'conduct, transaction, or
occurrence.'"   Id. at 895.   Under that standard, a complaint
could relate back under a much broader set of circumstances: any
situation in which the "amendment shows the same general factual
situation as that alleged in the original pleading."[4]   Armiger v.

---

[4] These courts justify their construction in four ways.
First, they argue the plain text of Florida Rule of Civil

Associated Outdoor Clubs, Inc., 48 So. 3d 864, 870 (Fla. 2d DCA

2010) (quoting Keel v. Brown, 162 So. 2d 321, 323 (Fla. 2d DCA

1964), overruled on other grounds by Broward Builders Exch.,

Inc. v. Goehring, 231 So. 2d 513 (Fla. 1970); Flores v. Riscomp

Indus., Inc., 35 So. 3d 146, 148 (Fla. 3d DCA 2010) ("We have

articulated the test to be whether 'the original pleading gives

fair notice of the general fact situation out of which the claim

or defense arises.'" (quoting Kiehl v. Brown, 546 So. 2d 18, 19

(Fla. 3d DCA 1989))).

---

Procedure 1.190(c), where the claim relates back if it "arose
out of the conduct, transaction, or occurrence set forth . . .
in the original pleading," Fla. R. Civ. P. 1.190(c), requires a
functionalist consideration of whether the new claim stems from
the same alleged acts of the defendant's original action, rather
than a formalist consideration of causes of action. See
Fabbiano, 91 So. 3d at 894.
        Second, they turn to a general rule of statutory
construction that "[t]he relation back doctrine is to be applied
liberally." C.H. v. Whitney, 987 So. 2d 96, 99 (Fla. 5th DCA
2008) (citing Ron's Quality Towing, Inc. v. Se. Bank of Fla.,
765 So. 2d 134, 135 (Fla. 1st DCA 2000)).
        Third, they make an interpretative consistency argument:
concluding that because Florida Rule of Civil Procedure 1.190(c)
was "purposefully copied" from Federal Rule of Civil Procedure
15(c)(1)(B), and because such authorities "[u]nquestionably . .
. permit an amendment setting forth a new legal theory to relate
back after a statute of limitations has expired, provided that
the amended complaint arises from 'a common core of operative
facts,'" the Florida rule should be broadly interpreted in this
case. Fabbiano, 91 So. 3d at 896 (quoting Mayle v. Felix, 545
U.S. 644, 659-60 (2005)).
        Finally, they proffer a purpose-based analysis, arguing
that the general fact situation rule is "grounded in the notion
of fair notice" to the defendant, and conclude that so long as
"the original complaint gives fair notice of the factual
underpinning for the claim," relation back is proper. Id. at
895.

###### b.   Florida Supreme Court Authority

In the last year, the Florida Supreme Court, while not deciding this issue, has issued two decisions that provide guidance in analyzing the wrongful death relation back question.

In Caduceus Properties, LLC v. Graney, 137 So. 3d 987 (Fla. 2014), reh'g denied (Apr. 21, 2014),[5] the Florida Supreme Court addressed the question of whether an "amended complaint, naming a third-party defendant as a party defendant, relates back to the filing of the third-party complaint for statute of limitations purposes." Id. at 991.  The court concluded that it did.  Id. at 995.  In so doing, the court took two steps that are germane to this action: it adopted the broader, "general facts" interpretation of Florida Rule of Civil Procedure 1.190 discussed above, and it articulated several principles relevant to relation back doctrine generally.

First, the Florida Supreme Court emphasized that "Florida has a judicial policy of freely permitting amendments to the pleadings so that cases may be resolved on the merits, as long as the amendments do not prejudice or disadvantage the opposing party." Id. at 991-92.  Second, it favorably cited to district court of appeal cases, discussed supra, that had adopted the "general fact situation" construction, and by implication,

---

[5] The parties do not address Caduceus in their briefs, likely due to the case's recency,.

adopted that interpretation of the relation back rule as controlling.  Id. at 992 (citing, e.g., Fabbiano, 91 So. 3d at 894-95; Flores, 35 So. 3d at 148).  Third, it looked at the "purpose served by statutes of limitations," and concluded that they are designed to "prevent prejudice to defendants from the unexpected enforcement of stale claims."  Id.  Such concerns, it concluded, are not implicated so long as the defendant was "brought into the suit prior to the expiration of the statute of limitations and the plaintiff's claims concern the same conduct, transaction, or occurrence at issue in the [original] complaint."  Id.

The court then articulated the relevant relation back test, at least in third-party practice, as one where:

> [T]he key inquiry is whether the third-party complaint put the third-party defendant on notice of the conduct, transaction, or occurrence from which the plaintiff's claims against that defendant arose.  If so, then the statute of limitations should not bar such claims.

Id. at 992-93.  In passing, the court also noted that it was not "disturb[ing] the precedent that, generally, the relation-back doctrine does not apply when an amendment seeks to bring in an entirely new party defendant to the suit after the statute of limitations period has expired."  Id. at 993-94.

The second recent Florida Supreme Court decision, Capone v. Philip Morris USA, Inc., 116 So. 3d 363 (Fla. 2013), focused on

the Wrongful Death Act itself.  In it, the Florida Supreme Court
emphasized that the Wrongful Death Act must be interpreted
broadly in favor of amendment and substitution.  The court
stated that the "express intent of the [Wrongful Death] Act is
to shift the losses of survivors to the wrongdoer," and
cautioned against "creat[ing] additional technical procedural
hurdles through which personal representatives must carefully
navigate."  Id. at 376.  It thus concluded that the Wrongful
Death Act "must be interpreted in a manner that facilitates –
not complicates or convolutes – the initiation and progression
of a wrongful death action on behalf of a decedent's survivors
when the injured party plaintiff in a personal injury action
dies."  Id.  With these principles established, the court then
held that the Wrongful Death Act allows the personal
representative to substitute herself and amend the complaint
without requiring the complaint itself to be dismissed and re-
pled.  Id. at 376-77.

Stepping back, this Court draws several principles from
these cases.  First, as per Caduceus, the "general fact
situation" test governs, and thus the Defendants' reliance on
the "cause of action" test is misplaced.  See 137 So. 3d at 992.
Second, the key component of that test is whether the defendant
was "on notice of the conduct, transaction, or occurrence from
which the plaintiff's claims against [the] defendant arose."

15

*Id.* at 993.   Third, the court must look to whether the defendant was party to the action *before* the statute of limitations expired – if she was not, relation back is improper, *id.* at 993-94, but if she was, then relation back is likely proper, so long as the new claims involve the same underlying conduct as the old claims, *id.* at 992-93.   Finally, the Florida Supreme Court has made clear that both the Wrongful Death Act and the Florida Rule of Civil Procedure governing relation back ought be construed as broadly as possible.   See *id.* at 992; *Capone*, 116 So. 3d at 376-77.

### c.   Predicting the Florida Supreme Court's ruling on relation back of wrongful death actions[6]

In interpreting questions of state law, a district court is bound by the rules established by the state supreme court. *Commissioner* v. *Estate of Bosch*, 387 U.S. 456, 465 (1967); *see also* *Erie R. Co.* v. *Tompkins*, 304 U.S. 64 (1938).   This Court must "do that which [it] thinks the [state supreme court] would deem best." *Jackson* v. *Johns-Manville Sales Corp.*, 781 F.2d

---

[6] Ordinarily where, as here, the disposition of a motion is dictated by a controlling yet unsettled issue of state law, this Court would consider certifying the question to the state's highest court pursuant to the Uniform Certification of Questions of Law Act or its equivalent.   *See generally* Ira. P. Robbins, *The Uniform Certification of Questions of Law Act: A Proposal for Reform*, 18 J. Legis. 127 (1992).   The Florida Supreme Court, however, only accepts certified questions from the Supreme Court of the United States or a United States court of appeals.   Fla. R. App. P. 9.150(a).

394, 397 (5th Cir. 1986); see also Bravo v. United States, 577 F.3d 1324, 1326 (11th Cir. 2009) ("[W]e are bound to follow an intermediate state appellate court unless there is persuasive evidence that the highest state court would rule otherwise." (quoting King v. Order of United Commercial Travelers of Am., 333 U.S. 153, 158 (1948)) (internal quotation marks omitted)). Given that guidance, and the existing intermediate and Florida Supreme Court decisions, this Court holds that these wrongful death actions relate back to the original personal injury actions.

First, both the original and sought-to-be-amended causes of action, as pled, cover the same general fact situations that caused the injury to the original plaintiffs - the allegedly wrongful conduct of the Defendants. See Am. Class Action Compl. Compensatory & Punitive Damages ¶¶ 55-84, Engle v. R.J. Reynolds, No. 94:08273 CA (20) (Fla. Cir. Ct. Dade County); cf. Fla Stat. § 768.19 (stating that wrongful death and personal injury both require that the injury or death "is caused by the wrongful act [or] negligence . . . of any person"); Engle, 945 So. 2d at 1256 (describing the Engle class as consisting of Florida smokers "who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine"). In both cases, then, the smoker's medical history, pattern of smoking, and

efforts to mitigate – which make up the general fact situation
of the original complaint – would be the same.  The distinction
simply is with regard to the damage wrought by such Defendants'
allegedly wrongful acts: personal injury actions cover
situations where the litigant is injured but remains alive,
while wrongful death covers personal injuries that result in
death.  See Starling v. R.J. Reynolds Tobacco Co., 845 F. Supp.
2d. 1215, 1218-19 (M.D. Fla. 2011) (Dalton, J.).  Such
differences in the consequences of the "conduct, transaction, or
occurrence[s]" of the Defendants, however, do not suggest
differences in the underlying events which gave rise to
liability.  Fla. R. Civ. P. 1.190(c).

This view is consistent with positions taken by other Engle
courts.  In Capone, the Florida Supreme Court, while not
reaching the relation back question because the statute of
limitations was not implicated, held that when the plaintiff in
a personal injury action died, the case must be converted into a
wrongful death suit.  116 So. 3d at 377-78.  The conversion
process, however, does not require dismissal and the filing of a
new suit, but rather the case must be "suspended until the
personal representative of the decedent's estate is added as a
party to the pending action and receives a reasonable
opportunity to amend the complaint to state the damages sought
under a wrongful death claim . . . ."  Id. at 377.  Critically

18

for these purposes, the Florida Supreme Court only required that
the theory of <u>damages</u> be updated; the facts undergirding the
complaint, as per the language above, need not be changed when a
personal injury suit is converted to a wrongful death suit.
Such a holding is consistent with the view that a personal
injury and wrongful death action concern the same general fact
situation.   Similarly, Judge Walton, also considering the
Wrongful Death Act in the federal <u>Engle</u> progeny case <u>Starling</u>,
concluded that "[t]here is nothing to suggest . . . that the
institution of this new, separate, statutory cause of action
[wrongful death] arising from the same facts cannot be
implemented by virtue of an amendment to an existing complaint .
. . ."  845 F. Supp. 2d at 1231.   Such a ruling also accords
with the holding that a wrongful death action and personal
injury action can arise from the same facts.

  Second, the original complaints filed in these actions put
the Defendants "on notice of the conduct, transaction, or
occurrence from which the plaintiff's claim against the
defendant arose."   <u>Caduceus</u>, 137 So. 3d at 993; <u>see also</u> <u>Flores</u>,
35 So. 3d at 148 (articulating the relation back test as
"whether the original pleading gives fair notice of the general
fact situation out of which the claim or defenses arises"
(internal quotation marks omitted)); <u>Fabbiano</u>, 91 So. 3d at 895
(same).   Here, the original complaints, timely filed within one

year of the Florida Supreme Court's <u>Engle</u> decision decertifying
the class, <u>Engle</u>, 945 So. 2d at 1269-70, appear to have
articulated the general fact context - their smoking histories
and theories of defendant liability - out of which the new
wrongful death claim would lie.  The Defendants would thus be on
notice of the types of defenses they could raise, and the types
of evidence they would need to confront.  With such notice
requirements satisfied, this Court does not impute prejudice to
the Defendants, and thus relation back ought be allowed.

     Third, the amended complaints will not add any new
defendant parties to the action; under either theory, the
Defendants will remain the same.  This matters because the
Florida Supreme Court has highlighted the identity of the
parties as a key factor in whether allowing a cause of action to
relate back would prejudice the defendant.  <u>See</u> <u>Caduceus</u>, 137
So. 3d at 992 ("[T]he purpose underlying statute of limitations
- namely, preventing lack of notice and prejudice to the
defendant - is not implicated where the plaintiff's amended
complaint relates back to the filing of the third-party
complaint, as long as the third party was brought into the suit
prior to the expiration of the statute of limitations and the
plaintiff's claims concern the same conduct, transaction, or
occurrence at issue in the third-party complaint.").

Finally, allowing "relation back in this context is also consistent with Florida case law holding that [Florida Rule of Civil Procedure] 1.190(c) is to be liberally construed and applied." Id. Courts have held that "all doubts should be resolved in favor of allowing amendment," and that "[i]t is the public policy of this state to freely allow amendments to pleadings so that cases may be resolved upon their merits." Adams v. Knabb Turpentine Co., 435 So. 2d 944, 946 (Fla. 1st DCA 1983). Similarly, in Capone, the Florida Supreme Court has emphasized in a related context that the Wrongful Death Act, too, must be interpreted broadly, holding that the act "must be interpreted in a manner that facilitates – not complicates or convolutes – the initiation and progression of a wrongful death action on behalf of a decedent's survivors when the injured party plaintiff in a personal injury action dies." 116 So. 3d at 376. While that case did not directly deal with a statute of limitations argument, and thus does not control, the Florida Supreme Court's view that wrongful death actions should be adjudicated on the merits whenever possible ought inform this Court's analysis here. Both principles support a ruling that the wrongful death claims would relate back.

Thus, given these considerations, this Court GRANTS the Plaintiffs' motion to amend their complaints to add a wrongful

death claim, and DENIES Defendants' motion for summary judgment on statute of limitations grounds.

## C.   Survivorship Claims

In addition to the wrongful death amendment discussed above, Plaintiffs ask leave to amend the complaints to add an "alternative [] survivorship claim[] for the real parties' personal injuries." Mot. Amend 1. Defendants oppose, relying in part on this Court's order of November 26, 2012. Opp'n Amend 5-7; Order 16-17 (Corrigan, Howard, and Dalton, JJ.), Nov. 26, 2012, In Re: Engle Cases, Docket No. 3:09-cv-10000-WGY, ECF No. 835.

In order properly to adjudge this issue, it is first necessary to distinguish between a suit brought under the survival action statute, Fla. Stat. § 46.021, and a suit brought under the Wrongful Death Act, Fla. Stat. § 768.19. Both govern the situation where a plaintiff, now deceased and represented by a personal representative, was harmed by a defendant. The survival statute allows the person to recover "for injuries that did not result in the death of the plaintiff-decedent,"[7] and the Wrongful Death Act allows for "wrongful death damages where the

---

[7] Note that because "[a]n individual's claims for personal injuries not causing death survive the decedent's death and may be prosecuted by the personal representative as a survival claim," this question does not require a relation back analysis. Homaday v. Smith & Nephew, Inc., 994 F. Supp. 2d 1264, 1267 (M.D. Fla. 2014) (Whittemore, J.).

injury to the decedent ultimately resulted in death." Capone, 116 So. 3d at 375-76.   While both causes of action are necessarily "inconsistent and [in the] alternative," Smith v. Lusk, 356 So. 2d 1309, 1311 (Fla. 2d DCA 1978), when "the cause of the decedent's death may be disputed by the parties," a plaintiff may plead both, Capone, 116 So. 3d at 377; see also Niemi v. Brown & Williamson Tobacco Corp., 862 So. 2d 31, 34 (Fla. 2d DCA 2003) ("Unless the parties agree upon a cause of death, it is possible that the co-personal representatives will be required to plead both a personal injury action and an alternative wrongful death action."), approved, Capone, 116 So. 3d 363.   Thus, so long as there is reasonable debate over whether the defendant's conduct caused the plaintiff's death, alternative pleading ought be allowed.

There is, however, an order of this Court which suggests the opposite.   On November 26, 2012, this Court refused to grant leave to amend a series of complaints where the plaintiffs had "died before May 5, 1992, more than two years before the commencement of the Engle class action."   Order 2, Nov. 26, 2012.   The Court reasoned that because the original complaints had stated that the "Decedents died of their tobacco related illnesses," id. at 16-17, because the "complaints only sought relief under the Wrongful Death Act," id. at 17, and because a "survival claim . . . for personal injury has distinctly

different elements of damage and persons entitled to recover
when contrasted with a wrongful death claim under the Wrongful
Death Act," id., amendment was not proper.  The Court also
emphasized that the Plaintiffs had, in effect, slept on their
rights, stating that "Plaintiffs had years after the smokers
died, and before they filed these wrongful death claims (fifteen
years at least) to learn what caused the deaths . . . ."  Id. at
18.

This order, however, need not govern the Court's decision
here, as the factual context of that order and these cases
differs in two material ways.  First, in the original order, the
cases in question involved smokers who had already passed away
before the complaint was filed, and thus the personal
representative had time to investigate the cause of death before
bringing suit.  Id.  Second, those representatives chose to
plead only a wrongful death action, and in so doing claimed that
smoker had died because of the defendants conduct.  Id. at 16-
17.  Under such circumstances, the Court could conclude that
there was no reasonable dispute about the cause of death, and
thus that alternate pleading was not appropriate.

In this case, however, the original complaints were filed
when the plaintiffs were still alive, and thus, by definition,
it would have been impossible to investigate the cause of death
at that time.  Similarly, unlike in that order, the plaintiffs

24

here have not taken actions that obviously indicate that there
is no dispute about cause of death.   Finally, inasmuch as Capone
clarified that a survival action and wrongful death action are
acceptable alternative pleadings, this Court now has the benefit
of the Florida Supreme Court's guidance, and the 2012 order
should be reevaluated in light of that guidance.

Thus, given the framework confirmed by Capone, as well as
the rule that a personal representative "may at any time be made
a party" to carry out a survival action, Fla. R. Civ. P.
1.210(a), this Court GRANTS the motion to amend the complaints
in question to allow for survival actions.   Such an action,
however, is without prejudice to future motions to dismiss in
the event that in any individual complaint the "cause of the
decedent's death [is not] . . . disputed by the parties."
Capone, 116 So. 3d at 378.

### D.   Equitable Tolling

As an alternative to their argument that the amended
complaint would relate back to the original complaint, the
Plaintiffs argue that statute of limitations has been tolled by
virtue of this Court's stay order entered on October 29, 2008
and the November 12, 2009 order maintaining that stay.   Pls.'
Opp'n 12.   The Defendants, unsurprisingly, disagree, concluding
that the stay order did not toll the limitations period.   Defs.'
Mot. 12-13.   While the Court need not definitively answer the

question, since it holds that the wrongful death action relates back, for the sake of completeness it does address this matter.

As a prerequisite issue, the Defendants question whether equitable tolling applies in the context of ordinary civil litigation at all. Id. at 13. They point to case law holding that "[e]quitable tolling is unavailable outside of the administrative context." Id. (quoting Lopez v. Geico Cas. Co., 968 F. Supp. 2d 1202, 1206 (S.D. Fla. 2013)); see also Pierson v. Orlando Reg'l Healthcare Sys., Inc., No. 6:08-cv-466-Orl-28GJK, 2010 WL 1408391, at *15 (M.D. Fla. Apr. 6, 2010) (Antoon, J.) ("Equitable tolling, however, is not available in civil actions in Florida."), aff'd, 451 F. App'x 862 (11th Cir. 2012); HCA Health Servs. of Fla., Inc. v. Hillman, 906 So. 2d 1094, 1099 (Fla. 2d DCA 2004) ("We are not persuaded that our supreme court would allow the doctrine [of equitable tolling] to be applied in civil action[s] such as the Plaintiffs'.").

These cases base their reasoning on Florida Statutes section 95.051, which provides that "[t]he running of the time under any statute of limitations," save for three exceptions not relevant here, may only be tolled by one of nine distinct statutory reasons, none of which includes equitable tolling. Fla. Stat. § 95.051(1). The statute then states that "[a] disability or other reason does not toll the running of any statute of limitations except those specified in this section

26

[or other statutory provisions not relevant here]." Id. §
95.051(2). Since the tolling exceptions in civil cases are
exclusive to those listed in the statute, and since those
exceptions do not include equitable tolling, such tolling
cannot, these courts conclude, apply.

While this argument is compelling, it is not the only
authority on the subject. In Starling, Judge Dalton recognized
this line of authority, but concluded that there was "persuasive
authority indicat[ing] that the Florida Supreme Court would find
equitable tolling available" in an Engle case. 845 F. Supp. 2d
at 1237. As a basis for this determination, Judge Dalton cited
to the Florida Supreme Court's decision in Major League Baseball
v. Morsani, 790 So. 2d 1071 (Fla. 2001), where the court held
that "[e]quitable tolling, which involves no misconduct on the
part of the defendant, may delay the running of the limitations
period based on the plaintiff's blameless ignorance and the lack
of prejudice to the defendant." Starling, 845 F. Supp. 2d at
1238 (quoting Morsani, 790 So. 2d at 1076 n.11). Judge Dalton
reasoned that had "the Florida Supreme Court intended to limit
the doctrine of equitable tolling to the administrative law
context, it could have so indicated," and the fact that the
court emphasized the "plaintiff's blameless ignorance and lack
of prejudice to the defendant," rather than "the doctrine's
applicability on the context in which the action arises,"

27

indicates that equitable tolling could be applied in civil cases.  Id.  The Starling court thus concluded that equitable tolling could apply in civil cases, at least when the "interests of justice" so required.  Id. at 1239 (quoting Machules v. Dep't of Admin., 523 So. 2d 1132, 1134 (Fla. 1988)).

Both arguments are reasonable interpretations of the relevant statutory and case law.  Given this Court's stated preference for taking a "law of the case" approach to "matters already addressed and resolved" by federal Engle courts, Mem. & Order 2, Aug. 1, 2013, ECF No. 1120, this Court follows Judge Dalton's reasoning in Starling and concludes that equitable tolling can apply in civil actions.

That equitable tolling can apply in civil actions generally, however, does not mean that it necessarily applies in this case.  The Eleventh Circuit, in Aruanno v. Martin Cnty. Sherriff, 343 F. App'x 535 (11th Cir. 2009), listed the circumstances under which equitable tolling could apply:

> Florida law does allow for tolling in certain instances, but that list is exhaustive.  In Florida, equitable tolling may be available when there is no misconduct on behalf of the defendants and may delay the running of the limitations period based on the plaintiff's blameless ignorance and the lack of prejudice to the defendant.  It may also be used when a plaintiff has been misled or lulled into inaction and has in some extraordinary way been prevented from asserting his rights.  Nevertheless, [equitable] tolling is an extraordinary remedy which should be extended only sparingly.

Id. at 537 n.2 (internal citations and quotation marks omitted).
Here, the parties agree that the key issue is whether this
Court's October 29, 2008 stay order and the November 12, 2009
order maintaining the stay of all Engle cases on the Middle
District of Florida docket are sufficient to justify tolling.

In the order establishing the current Engle master docket
procedure, the Court ordered that:

> The stay in these cases remains in effect until
> further order of this Court.  Upon the lifting of the
> stay, the Court will enter orders requiring the filing
> of an amended complaint and answer in each case. . . .
> The Clerk is directed to close the originally filed
> cases listed above and terminate all pending motions
> in all cases.  After the stay is lifted, any motions
> which the parties wish to be heard shall be refiled
> with the appropriate new case style and case number.

Order ¶¶ 5-6 (Adams, Corrigan, and Howard, JJ.), Nov. 12, 2009,
ECF No. 1.  The Plaintiffs argue that this order "prevented
[them] from asserting [their] rights" to amend the complaints,
Aruanno, 343 F. App'x at 537 n.2, and the statute of limitations
was thus tolled.  Pls.' Opp'n 12-13.

It is not so clear, however, that the Plaintiffs were
prevented from asserting such rights.  The Plaintiffs are
correct that "[a] stay or other legal proceeding that prevents a
party from exercising a legal remedy 'can be held to toll the
operation of a statute of limitations.'"  United States ex rel.
Campbell v. Lockheed Martin Corp., 282 F. Supp. 2d 1324, 1336
(M.D. Fla. 2003) (Antoon, J.) (quoting United States v. Brichat,

129 B.R. 235, 238 (D. Kan. 1991)).  They are also correct to
point to Starling, where the court held that the plaintiff
"justifiably believed that the Court imposed stay applied to her
wrongful death action and prohibited her from filing her
claims," as evidence that the 2008 Engle stay and the 2009 order
maintaining it could justify equitable tolling.  845 F. Supp. 2d
at 1234.  Starling, however, cabins this right, stating that it
was "chary of extending equitable tolling beyond" the facts of
that case.  Id. at 1241.

     Moreover, Judge Dalton also took pains to remind the
plaintiffs that it "is the parties' responsibility to preserve
all causes of action and to protect their respective rights,"
id., and using even stronger language, stated:

          The Court makes no attempt to address the myriad
          factual scenarios which may be present in the
          thousands of remaining Engle progeny claims related to
          the timeliness of actions.  Suffice to say Plaintiffs
          sleep on their rights at their peril.  Plaintiffs'
          counsel are obliged to be aware of the date [of] their
          client's death.  The number of pending claims does not
          mitigate this obligation.

Id. at 1241 n.10.  Thus, insomuch as Starling was partially
based on the idea that the plaintiff in that case believed she
was unable to update her complaint, that conclusion becomes less
tenable after the decision was issued.  That plaintiffs may have
had an affirmative obligation became clearer over time, as other
federal Engle decisions have concluded that:

> [T]he stay did not prevent counsel from inquiring into
> the status of their clients and bringing any change in
> status to the Court's attention.  In fact, despite the
> stay, Plaintiffs have filed many protective motions to
> amend complaints to substitute the personal
> representatives of plaintiffs who died while their
> personal injury cases were pending.

Order 11 (Corrigan, Howard, and Dalton, JJ.), Jan. 22, 2013, ECF

No. 925.

Given these clear judicial commands, it is reasonable to

believe that the Plaintiffs at least had an obligation to

communicate with the Court about the deaths of their clients –

and under such circumstances, this Court cannot say that the

Plaintiffs have been "misled or lulled into inaction." Aruanno,

343 F. App'x at 537 n.2.  Given that "tolling is an

extraordinary remedy which should be extended only sparingly,"

Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993),

this Court holds that equitable tolling is not appropriate.

## III.  CASE MANAGEMENT CONSIDERATIONS

The problem of how to address situations where the

plaintiff dies in the interval between the filing of her

original complaint and the time when her case is ordered trial

ready will become more significant in 2015 and 2016.  Given this

context, this Court considers it helpful to set out several

guidelines governing how these types of complaints ought be

handled moving forward.

### A.    Complaints Where Plaintiff Dies Before Activation

31

For cases where, as here, the plaintiff dies before his or her case is activated by order of this Court, this Court adopts a rule that the complaint must be amended to reflect a wrongful death and survival action by the date set by the Court for all amended complaints to be filed.  The alternative would be to require the personal representative to file an amended complaint (or an equivalent notice) upon the decedent's death.  This would, to be sure, be more timely, but it would also be logistically difficult for the parties and court staff. Moreover, insomuch as the "wave" system of staying and activating cases was organized so that counsel would not vigorously be working on stayed cases until activation, the fact that a party had died in a stayed case ought not prejudice any party.

If, however, plaintiffs fail to amend their complaints in compliance with the deadline in the activation order, such failure could be considered "undue delay" or "bad faith," which would provide this Court a basis to deny leave to amend under Federal Rule of Civil Procedure 15(a).  Foman, 371 U.S. at 182.

**B.   Complaints Where Plaintiff Dies After Activation**

For cases where the plaintiff dies after the case is activated, this Court adopts Capone's rule, and holds that "the personal representative of the decedent's estate may be added to the pending action as a party and, thereafter, shall have a

reasonable opportunity to file an amended pleading that alleges new or amended claims and causes of action." 116 So. 3d at 377-78. This Court recognizes that "reasonable opportunity" has not been precisely defined, and anticipates that it will consider sixty days a sufficient time for these purposes. The Court may revisit this timing issue at a later date.

## IV.   CONCLUSION

For the aforementioned reasons, this Court GRANTS the Plaintiffs' motion to amend, ECF No. 1412, and DENIES the Defendants' motion for summary judgment, ECF No. 1386. The motion to amend the complaints to add survival claims is without prejudice to any future, fact-specific motions.

The motion to amend is granted only as to the cases in Appendix A that have been activated by order of this Court; the other cases must be amended to reflect wrongful death and survival actions upon the issuance of a Court activation order.


**SO ORDERED.**

*William G. Young*
WILLIAM G. YOUNG[8]
DISTRICT JUDGE

---

[8] Of the District of Massachusetts, sitting by designation.